25 C.C.P.A.(Patents)

## In re BREER.
### Patent Appeal No. 3907.

Court of Customs and Patent Appeals.
Feb. 28, 1938.

Charles M. Thomas and Francis D. Thomas, both of Washington, D. .C., J. King Harness and Frederick A. Lind, both of Detroit, Mich., for appellant.

R. F. Whitehead, of Washington, D. .C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

Appellant by appeal brings before us for review a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner rejecting thirteen claims, being all the claims, of an application for patent relating to an alleged improvement in the riding qualities of vehicles.

The claims are numbered, respectively, 13 to 15, inclusive, and 20 to 29, inclusive. Nos. 13, 20, and 25 seem fairly illustrative of the subject matter. These read:

"13. In combination, a vehicle having front and rear wheels and a substantially rigid sprung mass supported thereon by relatively stiff front springs and relatively soft rear springs, said sprung mass being so distributed with respect to said springs as to produce a natural oscillation frequency of the front end of the sprung mass of less than a hundred cycles per minute."

"20. In combination, a vehicle having front and rear wheels and a substantially rigid sprung mass supported thereon by means of relatively stiff front springs and relatively soft rear springs, the center of gravity of said sprung mass being disposed at a point spaced from the effective point of application of the rear springs a distance between 53% and 59% of the distance between the effective points of application of the front and rear springs."

"25. In combination, a vehicle having front and rear wheels, relatively stiff springs associated with said front wheels and relatively soft springs associated with said rear wheels, and a relatively rigid sprung mass supported front and rear by said stiff and soft springs, the weight of said sprung mass being so disposed with respect to said springs as to produce a natural oscillation frequency of the front end of said mass of between ninety and one hundred cycles per minute and a natural oscillation frequency of the rear end of said mass of less than one hundred cycles per minute and so as to produce a center of percussion with respect to an axis of rotation disposed in a vertical plane passing through the front spring center which will substantially coincide with the vertical plane of the rear spring center and a center of percussion with respect to an axis of rotation disposed in a vertical plane passing through the rear spring center will substantially coincide with the vertical plane of the front spring centers."

Appellant's alleged invention resides in his distribution, claimed to be novel, of the weight of the parts of the vehicle. The following taken from the specification gives a general description of the arrangement:

"It should be noted, however, that by placing the engine, the unit of greatest concentrated weight, much farther forward than is customary, and by shifting other units, such as the battery and spare tire, from the center of the car to the rear end thereof, I have materially increased the moment of inertia opposing any forces applied to the sprung unit by the springs when the wheels receive an impact from the road surface. In the car illustrated, the center of gravity is disposed at a distance from the centers of the rear springs equal to approximately 56% of the wheel base, although any point within the range of 53% to 59% appears to produce a material improvement in riding qualities. Al-

so, in the car illustrated, a sufficient number of the units employed in the car are shifted towards the ends of the sprung mass or unit that the center of percussion of the sprung unit with respect to an axis of rotation disposed in the vertical plane passing through the rear spring center is disposed approximately in the vertical plane passing through the center of application of the front springs and, likewise, the center of percussion of the sprung unit with respect to an axis of rotation disposed in the vertical plane passing through the front spring center will substantially coincide with the vertical plane passing through the center of application of the rear springs."

The argument presented before us seems to have followed quite closely that presented before the Board and summarized in its decision as follows:

"Applicant emphasizes that by advancing the load of the complete vehicle exclusive of the axles or unsprung parts forwardly and by using relatively stiff front springs and soft rear springs and by distributing the load as much as possible into two zones at the ends of the body of the vehicle in a manner broadly comparable to a dumb-bell formation and so proportioning the parts that the center of percussion of application of shocks by the axles may bear to the axis of rotation of the body, the relation set forth and as included in claim 25, together with the other features of the other claims, greater riding comfort may be secured. It is emphasized that such structure is so proportioned as to have a natural period of swing or oscillation of less than 100 cycles per minute. Applicant also sets forth certain relations between the center of gravity of the body and the structural center of the distance between the axles as claimed and worded in claim 20. Applicant claims to have discovered that if the oscillation frequency be reduced to or below that of the natural swing of the human body in walking, fatigue caused by riding will be greatly minimized or eliminated."

Two of the reference patents cited by the Examiner were rejected as references by the Board. The two remaining patent references are: Jaray, 1,631,269, June 7, 1927; Windberger, 1,936,318, November 21, 1933.

The Examiner also cited "Motor Vehicles and Tractors," by P. M. Heldt, quoting therefrom as follows: "The deflection of front springs is purposely kept small, because a large deflection of these springs makes the steering erratic. * * * In passenger cars the deflection of the front springs under full static load usually lies between 1¼ and 2 inches. Rear springs of passenger cars are * * * made long and flexible. The deflection * * * varies between 4 and 7 inches."

The last-named reference is included in the brief filed before us by the Solicitor for the Patent Office, but is not in the list given in the Board's decision, nor is it referred to in that decision. The article, except as above quoted, is not contained in the record, nor do the briefs on behalf of appellant (a reply brief having been permitted by the court) make any reference to it. As we understand it, the matter was cited merely to show that the use of "relatively stiff front springs and relatively soft rear springs" is conventional, a fact which is conceded.

The Examiner apparently rejected all of the appealed claims upon the patent to Jaray. Claims 13, 14, and 15 were rejected also upon the patent to Windberger. As to claims 13, 14, 15, 25, 28, and 29, an additional ground of rejection was applied, the Examiner saying in his statement following the appeal to the Board:

"Claims 13, 14 and 15 are under rejection as indefinite for failure to comply with the requirements of Section 4888 of the Revised Statute, as amended by Act May 23, 1930, 35 U.S.C.A. § 33. These claims do not define any relation of parts on the motor vehicle to obtain the results desired. Each of the claims merely recites a conventional vehicle having front and rear wheels and a sprung mass supported on the wheels by means of springs. The mass is then defined to be 'so distributed' with respect to the springs as to produce 'natural oscillation frequencies' of the sprung mass of less than one hundred cycles per minute. It is maintained that these claims merely incorporate the theory underlying applicant's structure and define nothing more than the object of applicant's invention.

"Claims 25, 28 and 29 are under rejection on the same grounds. These claims add to the function recited in claims 13, 14 and 15 the characteristic that the weight distributed is such as to make the centers of percussion coincide with the spring centers. As in the other claims, it is deemed that these expressions do no more

than incorporate the theory developed by applicant which is not a subject of invention."

Each of the foregoing grounds was specifically approved by the board. Appellant filed a petition for reconsideration, accompanying same with a number of affidavits. The petition was denied in a brief decision wherein it was said: "We have considered the further remarks and showing in connection with the petition without finding reason for changing our conclusions. In affirming the examiner's rejection on Jaray and on Windberger we recognized that these patents do not specifically discuss the particular theory and claimed results set forth by applicant but we hold that patentably equivalent results are necessarily inherent in the structures shown. We are not convinced by the affidavits that such holding is unwarranted or in error."

The primary object of Jaray seems to have been the production of a type of so-called stream-lined automobile. It is shown in drawings with description of details in the specification. One drawing shows a motor at the front end substantially over the front axle; another shows the motor to the rear of the front axle. No springs are shown in the drawings, but the specification defines their location and arrangement. At the rear of the car, space is provided for baggage, spare parts, and, if desired, a storage battery. In comparing Jaray's structure with that of appellant, the Board states: "We find in the patent to Jaray (Fig. 1) a structure which we believe prevents the allowance of any of the claims on appeal. Jaray shows in that figure a location of the engine which appears identical with that shown by applicant and Jaray states that the space back of the rear axle may be used for baggage, spare parts, which would include a spare tire as shown, and even the battery, identically like applicant's distribution of the shiftable load into two parts to the extreme

front and rear of the swung body. The position of passengers in Jaray's machine appears identical with that in applicant's showing. * * *"

The patent to Windberger discloses an automobile structure having a motor at the back of the rear axle with fuel tank, radiator, differential, and change-speed gears disposed at the front. The Board points out that these latter establish a "distinct center of mass on the front axle." The Windberger specification teaches that "The arrangement may alternatively be such that the radiator and even the petrol tank are also arranged in front. * * *"

Neither of the cited patents makes disclosure of a purpose or result such as appellant discloses. Neither contains any discussion of the location of the center of gravity or the centers of percussion and the effects of such location. It was conceded by both tribunals of the Patent Office that neither patentee described the result or "theory" set forth with much particularity in appellant's application. The holding, in substance, is that the results are inherent in the actual structures which the patents do show.

We have examined with care the several affidavits filed in connection with the petition for rehearing before the Board. They do not seem to us to establish any material fact not conceded by both the Examiner and the Board, and do not, in our opinion, negative the inherency in the patent structures of the functions which appellant claims, either broadly as in some of the claims, or in limited degree as in others.

We are not convinced that there was error in holding all the claims rejectable on the prior art. Under this view, there is no necessity of our discussing the objections to claims 13, 14, 15, 25, 28 and 29 on the ground of their functionality.

The decision of the Board of Appeals is affirmed.

Affirmed.